IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39269

STATE OF IDAHO,               )
                                     )     **2012 Opinion No. 45**
     **Plaintiff-Respondent,**     )
                                     )     **Filed: August 27, 2012**
v.                             )
                                     )     **Stephen W. Kenyon, Clerk**
HENRY ROY LOMAN,        )
                                     )
     **Defendant-Appellant.**     )
                                     )

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Randy J. Stoker, District Judge.

Order denying motion to suppress evidence, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Henry Roy Loman appeals from his judgment of conviction, on a conditional guilty plea, for possession of methamphetamine.  We are asked to decide whether Loman, after being informed that he would be arrested, successfully insulated his coat from a lawful search incident to the arrest by removing the coat and tossing it into his car before he was restrained by the officer.

## I.

## BACKGROUND

According to evidence presented at a hearing on Loman's suppression motion, Officer Timothy Arrendondo of the Twin Falls Police Department was on routine patrol on a cold winter day in 2011 when he observed a vehicle being driven by Loman.  Officer Arrendondo knew Loman from prior law enforcement contacts, including an arrest on a methamphetamine charge three years earlier.  Arrendondo ran a records check and discovered that Loman was wanted on

1

an outstanding arrest warrant. As Officer Arrendondo watched, Loman parked, and he and his passenger, Tex Mason, entered a residence. Arrendondo decided to wait for the men to return to Loman's vehicle and parked his patrol car in an alleyway where he had a view of the Loman vehicle but could not easily be seen. While waiting, Arrendondo called for a backup officer.

A short time later, the two men emerged from the residence, and as they were reentering the car the backup officer drove his cruiser past the Loman vehicle but did not stop. Arrendondo observed that the two men showed interest in the movements of the cruiser, watching as it continued further down the street. According to Arrendondo, the men looked around in all directions as if checking to see whether other police were in the area. The two men then sat in the vehicle "for quite a while" with the engine running. Arrendondo observed Loman, now in the passenger seat, with Mason in the driver's seat, "hunched down messing with something." The officer then pulled in behind the vehicle and activated his overhead lights.

Loman immediately got out of his vehicle and began walking toward Arrendondo. The officer, feeling threatened, drew his service weapon, told Loman that he had a warrant for his arrest, and ordered Loman to place his hands on the vehicle. Loman initially complied, but when the officer holstered his weapon and ordered Loman to place his hands behind his back Loman started to take off his coat. The officer told Loman to leave his coat on and comply with his orders, but Loman pulled away, took his coat off, threw it on the passenger seat of his car, and shut the door. Arrendondo ordered Mason to keep his hands on the steering wheel and, with the assistance of the backup officer, handcuffed Loman. Arrendondo then opened the passenger door, removed Loman's coat, and threw it on the ground. While the backup officer walked Loman back to the transport vehicle, Arrendondo searched the coat. He found a flashlight in a coat pocket and discovered methamphetamine and a glass pipe inside the flashlight.

Loman was charged with possession of methamphetamine and possession of drug paraphernalia. He filed a motion to suppress the evidence found in his coat, contending that the warrantless search of the coat was unlawful. The district court denied the motion. Loman then reached a plea agreement whereby the paraphernalia charge was dismissed and he pleaded guilty to possession of methamphetamine, reserving the right to appeal the denial of his suppression motion. Loman appeals from the resulting judgment of conviction.

## II.

## ANALYSIS

On review of a decision granting or denying a suppression motion, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Searches conducted without a warrant are presumed to be unreasonable and therefore violative of the Fourth Amendment. The State may overcome this presumption, however, by demonstrating that the search falls within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995); *State v. Stewart*, 152 Idaho 868, 869, 276 P.3d 740, 741 (Ct. App. 2012).

Here, the district court denied Loman's suppression motion on a determination that the search of Loman's coat fell within the warrant exception for searches incident to the arrest of an individual. *See Chimel v. California*, 395 U.S. 752, 762-63 (1969); *State v. Robertson*, 134 Idaho 180, 186, 997 P.2d 641, 647 (Ct. App. 2000). The district court reasoned that because Loman's coat was part of his person when the officer announced that he was under arrest, Loman could not thereafter effectively make it *not* part of his person by removing it and placing it in the vehicle. For this proposition, the district court relied upon *State v. Bowman*, 134 Idaho 176, 997 P.2d 637 (Ct. App. 2000), where a man who had been detained by an officer for investigative purposes removed his jacket and gave it to a woman who was standing nearby. The officer subsequently determined that there existed a warrant for the man's arrest, placed him under arrest, and then obtained the jacket from the woman and searched it. We there held that the officer's search of the jacket was a valid search incident to the man's arrest. *Id.* at 180, 997 P.2d at 641. On appeal, Loman argues that *Bowman* is distinguishable and, further, that its analysis is

3

called into question by the United States Supreme Court's subsequent decision in *Arizona v. Gant*, 556 U.S. 332 (2009).

We conclude that it is unnecessary to address Loman's argument that the search of his coat was not justifiable as a search incident to his arrest, for the search falls squarely within another exception to the warrant requirement that was argued by the State both below and on appeal, the automobile exception. Under the long-recognized automobile exception, police officers having probable cause to believe that an automobile contains contraband or evidence of a crime may search the automobile without a warrant. *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999); *State v. Gallegos*, 120 Idaho 894, 897-98, 821 P.2d 949, 952-53 (1991); *State v. Johnson*, 152 Idaho 56, 61, 266 P.3d 1161, 1166 (Ct. App. 2011); *State v. Smith*, 152 Idaho 115, 120, 266 P.3d 1220, 1225 (Ct. App. 2011); *State v. Newman*, 149 Idaho 596, 599, 237 P.3d 1222, 1225 (Ct. App. 2010). A warrant is not obligatory in this circumstance because there is a lesser expectation of privacy in automobiles than in homes or in one's person and because the "ready mobility" of an automobile creates the risk that evidence will be permanently lost while a warrant is obtained. *Houghton*, 526 U.S. at 304; *United States v. Ross*, 456 U.S. 798, 820-21 (1982). The search of an automobile on probable cause may include opening any containers within the vehicle that could hold the suspected evidence. *Houghton*, 526 U.S. at 306; *Ross*, 456 U.S. at 820-21.

Probable cause is a flexible, common-sense standard. A practical, nontechnical probability that incriminating evidence is present is all that is required. *Texas v. Brown*, 460 U.S. 730, 742 (1983). Probable cause does not require an actual showing of criminal activity, but only the probability or substantial chance of such activity. *Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983). The facts known to the officers must be judged in accordance with the factual and practical considerations of everyday life on which reasonable and prudent people act. *Id.* at 231.

Here, the officer knew that Loman had previously been arrested on a methamphetamine charge and he observed Loman and Mason enter and exit a residence, staying only a short time, and then engage in activity in the car consistent with drug use. When the officer announced to Loman that he was about to be arrested and searched, Loman ignored the officer's commands to leave his coat on and place his hands behind his back. Instead, despite the cold temperature and despite having just been instructed by an officer holding an unholstered firearm, Loman tried to

4

distance himself from the coat and prevent it from being searched. He pulled away from the officer, tore his coat off, threw it in the car, and shut the door. Under the totality of these circumstances and applying common sense, these facts gave rise to probable cause to believe that the coat contained drugs or some other contraband that Loman rather desperately wanted to keep away from the officer. Because the coat was in a vehicle, it could lawfully be searched by the officer without a warrant under the automobile exception. Therefore, the district court correctly denied Loman's motion to suppress the fruit of that search.

The district court's order denying Loman's motion to suppress evidence is affirmed.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR.**